## SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. LOREN B. SESSIONS.

*Criminal law — Indictment — When, how and under what circumstances an indictment may be removed from the court of sessions to the court of oyer and terminer — What is good cause — Code of Criminal Procedure, sections 344, 346, 347, 962, 963.*

Every application for the removal of an indictment must rest in the sound discretion of the court or judge who is to determine it.

A motion of this character should be granted not only when the obtainment of an impartial and fair trial requires it, but also whenever the situation and official standing of the accused party, the undisputed and clearly divided line of popular opinion, and the circumstances of the alleged crime, as well as the important legal questions which it presents, so magnify the importance of the cause as to justify its removal from the inferior to the superior tribunal for trial.

S., a member of the senate of this state, was indicted in the court of sessions of Albany county for the crime of bribery, the act alleged being the payment by him of $2,000 to B., then a member of assembly, to induce the said B. to vote for D. to represent the state in the senate of the United States. On a motion by defendant to remove the indictment from the court of sessions to the court of oyer and terminer:

*Held,* that as this case would involve difficult legal questions (*see chap.* 599, *Laws of* 1853; *chap.* 742, *Laws of* 1869; *article* 15 *of the Constitution*); that the political and official standing of the accused, the act charged and

the warm and bitter feelings which the allegation of its perpetration caused have magnified this cause far above and beyond an offense committed under other and different circumstances, renders it a case of sufficient importance as to justify its removal.

Although the notice was one to be made at special term, and not to a judge of the court; *held*, that as a special term must be held by a single judge, and as the judge who in fact held it, when the motion was made, is the identical one specified in the notice of motion before whom, at special term, it would be made, the objection must be disregarded. As the notice is of a motion "before Mr. justice WESTBROOK," the addition thereto "at the next special term," &c., may be rejected as surplusage.

*Ulster Special Term, January,* 1882.

MOTION on behalf of the defendant to remove an indictment from the court of sessions of Albany county to the court of oyer and terminer of the same county.

*R. W. Peckham* and *Hamilton Harris,* for motion.

*Attorney-General Russell* and *District-Attorney Herrick,* opposed.

WESTBROOK, J. — Since the argument of this motion, on Saturday afternoon last, I have been constantly occupied with the Ulster circuit, the session of which has closed this (January 20, 1882) morning. The public interest manifested in this case, the gravity of the charge, and the social and political standing of the parties implicated, as well as the unsettled condition of the law in regard to a motion of this character, unite in requiring a statement of the reasons for judicial action, which could not, owing to my engagements in court, as above stated, be sooner prepared.

At the Albany sessions in June, 1881, the defendant, Loren B. Sessions, was indicted for the crime of bribery, the act alleged being the payment by him of $2,000 to Samuel H. Bradley then a member of assembly of the state of New York, to induce the said Bradley to vote for Chauncey M. Depew to represent the state in the senate of the United States.

The history of the case since the presentation of the indict-
ment is as follows: During the term of the court at which
such indictment was found, the defendant appeared, and by his
then counsel, Messrs. Rufus W. Peckham and Henry Smith,
demanded an immediate trial. Owing to the wide-spread
publicity of the facts of the case which had been very fully
stated and discussed by the press of the entire country,
and the excitement of that period, the district attorney
declined to then bring the cause to trial. It therefore was
continued to the September sessions of the same year. One
of the counsel for the defendant, Mr. Henry Smith, had in
the meantime become very ill, which illness still continues,
and the indictment was not then pressed. At the November
sessions, and at the October and December oyers, no action
seems to have been taken by either side to have the matter
disposed of, but at the present term of the court of sessions
(January, 1882), the district attorney pressed the trial, and the
defendant, having procured from Mr. Justice Ingalls a stay of
proceedings, moves to transfer the case from the sessions to
the oyer, the first term of which is to be held on the first
Monday in February next.

The grounds of the motion are: That the case is one of
unusual public interest and importance, made so by the official
and political standing of the parties involved in the charge,
and that grave and difficult legal questions must arise upon the
trial thereof. The statement just made necessitates an exami-
nation of the statutes regulating this and similar applications.

By the Code of Criminal Procedure (sec. 344) "a criminal
action, prosecuted by indictment, may, at any time before trial,
on the application of the defendant, be removed   *   *   *
from a court of sessions or a city court to the court of oyer ·
and terminer of the same county, for good cause shown."
Notice of the application for such removal, which "must be
made to the supreme court, at a special term in the district"
(sec. 346), is requried to be given to the district attorney of
the county where the indictment is pending, and to enable

the defendant to make the motion, a judge of the supreme court is authorized (*sec.* 347) to "make an order staying the trial of the indictment until the application can be made and decided." The Code of Criminal Procedure, however, took effect (*sec.* 963) " on the 1st day of September, 1881," and as the practice under it (*sec.* 962) only applies to " criminal actions and to all other proceedings in criminal cases    *   *   *    from the time when it takes effect," leaving all others to ": be conducted in the same manner as if this Code had not been passed," it follows, the indictment having been found in June, 1881, that the present application, which is based upon the Code, must fail, unless the papers presented can be used under the provisions of the Revised Statutes, the enactments of which will be next considered.

By the Revised Statutes (*vol.* 3 [*6th ed.*], *p.* 1026, *sec.* 89, *&c.*), " every person against whom an indictment shall be pending in any court of sessions, may apply to any justice of the supreme court for an order to remove such indictment to the court of oyer and terminer of the county in which the same was found." The application must " set forth a copy of the indictment, or the substance thereof, the time when it was found, the proceedings thereon, if any, and the facts and circumstances rendering a removal thereof expedient, and shall be verified by affidavit." It is then declared that (*sec.* 89) " the officer to whom such application is made shall grant an order that such indictment be removed to, and that the defendant therein be tried at the next court of oyer and terminer to be held in the county where such indictment was found, unless it shall appear that the application therefor was not made in due season, or that such removal will produce any injurious delay, or in any way tend to prevent a due prosecution of such indictment."

By a comparison of the provisions of the Revised Statutes, which have just been given, with those of the Code, it will be observed that there is an important difference between them in one particular. The latter requires for the removal, "good

cause shown," whilst the former makes the removal a matter of right, unless the application should be refused for the reasons which they specifically state. Chapter 325 of the Laws of 1878, however, amended section 76 of the Revised Statutes (*the section numbered* 87 *in the* 6*th ed.*), so as to require a notice of ten days to the district attorney of the county in which the indictment is pending, and a service upon him of copies of all the papers on which such application is made. The same act also amends the seventy-eighth section of the Revised Statutes (*sec.* 89 *of* 6*th ed.*) by substituting the word "may" for "shall" thus submitting the application to the discretion of the judge, instead of making the granting thereof a matter of right, unless forbidden for one of the reasons which the section particularizes. As a power vested in a court or a judicial officer should always be exercised in a proper case, and in no other, it follows that there is now no substantial difference between the Revised Statutes and the Code as to the causes justifying the removal of a criminal action from the sessions to the oyer. By the former "the facts and circumstances rendering a removal thereof expedient" must be stated in the moving papers, and as upon their sufficiency a judicial discretion is to be exercised, it is entirely clear that such "facts and circumstances," which are to be stated in an application under the Revised Statutes, must be such as amount to what the Code calls "good cause." In disposing of the present application, then, we are required to decide, what is "good cause" for the removal of an indictment from the sessions to the oyer for trial.

It was stated by counsel on both sides, upon the argument of this motion, that the point now to be considered has never been decided in this state. The reason for the absence of judicial precedent to guide us, is doubtless to be found in the fact already stated, that prior to the year 1878, when the Revised Statutes were amended in this particular, an application of this character was to be granted unless it could be refused for the reasons which the statutes themselves specify.

We are compelled then to define "good cause" for ourselves, unaided by the reasoning of others. In attempting to solve this legal problem, the first thought which naturally suggests itself is: Why was an expression so general and sweeping used? If the legislature had in view any particular reasons, which, in their judgment, were sufficient to transfer any criminal action from the one court to the other, and had determined that no others should have that effect, those reasons would have been embodied in the statute. The result from such omission, and the general language employed is, that every application for removal must rest in the sound discretion of the court or judge who is to determine it, and the reasons must be as various as the surroundings of each case in which it is attempted. Without undertaking to define with exact precision the phrase employed, it will be safe to say, that a motion of this character should be granted not only when the obtainment of an impartial and fair trial requires it, but also whenever the situation and official standing of the accused party, the widespread and clearly divided line of popular opinion, and the circumstances of the alleged crime, as well as the important legal questions which it presents, so magnify the importance of the cause, as to justify its removal from the inferior to the superior tribunal for trial. In deciding upon such an application, it is impossible that the court or judge to whom it is addressed, should regard the *personnel* of the magistrate who is to preside in the lower court. An attempt by any court or judge to weigh in his own judgment the mental and moral qualifications of judges, who fill positions of equal grade, and then to grant or refuse an application of this character according to his judgment of the qualifications of the particular judge who presides over the tribunal from which the proceeding is sought to be removed, would be exceptional conduct in the administration of justice. Rules for the government of judicial tribunals must be general in their character, and not fluctuating according to the caprice of the individual who presides over their

deliberations. While, as a fact, the writer of this opinion freely concedes the learning, integrity and ability of the present county judge of Albany county, who presides over its court of sessions, yet that fact cannot overcome the legal and only practical rule, that the dignity and importance of a court must depend upon its constitutional *status*. In other words, the tribunal or court which the laws of the state make the superior one must, in the administration of justice, be so regarded. This brings us to the question: Is the present application within the rule indicated ?

That this case will involve difficult legal questions (*see chap.* 539, *Laws of* 1853 ; *chap.* 742 *of Laws of* 1869 ; *art.* 15 *of the Constitution*) it is easy to see. That the political and official standing of the accused (he was, at the time of the alleged act, a member of the senate of this state), the act charged, and the warm and bitter feelings which the allegation of its perpetration caused, have magnified this cause far above and beyond an offense committed under other and different circumstances must also be conceded ; and if any case of sufficient importance can be supposed, in which the relief asked should be granted, then the present is that case.

It is said, however, that this motion should be refused because the notice was one to be made at special term, and not to a judge of the court, as the Revised Statutes provide. There is, as in the preparation of the moving papers the attorney who drafted them relied upon the Code, and not the Revised Statutes, this technical difficulty. As, however, a special term must be held by a single judge, and as the judge who in fact held it, when the motion was made, is the identical one specified in the notice of motion before whom at special term it would be made, the objection must be disregarded. A refusal on any such ground as this would only tend to delay. The papers served contain all that the Revised Statutes require, and as the notice is of a motion " before Mr. justice WESTBROOK," the addition thereto " at the next special term," etc., may be rejected as surplusage.

People's Bank of New York agt. Mechanics' Nat. Bank of Newark.

In granting this motion the objection founded upon the terms of courts already passed has not been forgotten. The papers show that (with the exception of the June term when the defendant urged a trial) until the present term of the Albany sessions neither party has pressed the cause to a conclusion. Owing to the illness of Mr. Henry Smith, one of the ·counsel for the defendant, there was no consultation between Mr. Peckham and his present associate until the present court began, and of course there was no conclusion as to the propriety of this action. The oyer and terminer will be held on the first Monday in February next, and the delay is therefore not at all serious, and can work no prejudice. Neither will the granting of the motion, which the statute seems to me to demand, deprive the people of the services of the judge who presides over the court of sessions. He is a member of the oyer and terminer to which the action is transferred, and can and ought to sit during the trial. The association with him of a justice of the supreme court of the state to assist in the administration of justice can work no wrong, but will be an additional guarantee of safety in the conduct of a trial of great importance both to the people and the accused."