Rockingham, }
Nov. 7, 1905. }

JAQUES, *Ap't,* v. CHANDLER, *Ex'x, & a.*

Under the statute authorizing the probate court, "for good cause shown," to extend the time within which a husband may waive the provisions of his wife's will in his favor, such extension may be granted whenever justice requires it; and what justice requires in a given case is a question of fact and not of law.

A finding that a petitioner has not shown good cause for extending the time in which to waive the provisions of a will, made by a tribunal having jurisdiction of the subject-matter and supported by competent evidence, cannot be set aside unless it is apparent from the facts reported that the result was produced by passion, partiality, or corruption, or that the court unwittingly fell into a plain mistake.

The mere fact that securities forming part of the estate of a married woman
   materially appreciated in value more than a year after her decease does
   not, as matter of law, entitle her husband to an extension of time within
   which to file a waiver of her will.

APPEAL, from a probate decree dismissing the petition of the
appellant for an extension of the time for filing a waiver of the
provisions in his favor of the will of his wife, Elizabeth H.
Jaques. Mrs. Jaques died April 2, 1895, and the petition was
filed in the probate court December 28, 1897. Facts found, and
case transferred from the April term, 1904, of the superior court,
by *Stone*, J.

*Streeter & Hollis* and *Edwin G. Eastman*, for the plaintiff. A
husband may waive provisions in his wife's will by writing filed
within one year after her decease, " and not afterwards, unless the
judge of probate, upon petition and for good cause shown, shall
extend the time." P. S., *c.* 186, *s.* 13. Upon good cause being
shown upon proper proceedings, it is the duty of the judge to
grant the extension. It was not intended to vest in him a purely
captious discretion.

What constitutes " good cause " is a question of law. Whether
one exists in a given case is a question of fact. In this case the
facts which the appellant claims constitute " good cause " have
been found by the judge. To the accuracy of facts as thus found
and stated in the reserved case, we understand there can be no
exception which will be considered by this court; but whether
those facts constitute " good cause," is a question of law to be
determined by this court, and the exception properly brings that
question here for determination. If this court shall determine
that the facts found constitute " good cause," it must be that the
petitioner is entitled to the extension as a matter of law.

One good cause intended by the statute is the discovery after
the year of the existence of facts which would have induced the
beneficiary to waive the will if he had known within the year that
they existed. If upon the facts found it appears that if he had
known all of the circumstances relating to the estate and the
amount and character of the property devised to him he would
have waived the will within the year, good cause is established,
and his right to an extension follows as a matter of law. It is
inequitable and contrary to the apparent intention of the legisla-
ture that he should be bound by an election to take under the
will, made in ignorance of material facts which, if known, would
have affected his choice. *Woodburn's Estate*, 138 Pa. St. 606.
In such a case he ought to be allowed further time for considera-

tion, and this the statute intended to give him as a matter of right. In all cases of this character, the question for the law court would seem to be whether all material facts affecting the husband's choice were known to him during the year, so that presumptively he acted intelligently in electing to take under the will, or in not electing to waive the will. His omission to waive the will is equivalent to an election to take under it, if he had knowledge of the true situation; otherwise, it is not.

We believe that the real effect of engrafting on the statute a time limit for exercising the right of waiver was to make an omission to waive within the year *prima facie* evidence, merely, that the party had elected to take under the will, which could be rebutted by "good cause shown"—that is, by throwing the burden on him to prove that he had not elected. Under the old statute, inaction for a year, without other evidence, probably would not have been held to constitute an election. In fact, the question was often mooted whether there was any limit to the time within which a party might waive the will. The legislature furnished an answer by enacting, in substance, that it would be presumed that if a party did not file a waiver within the year, he elected not to waive the will, but to take under it; and this presumption should prevail unless he showed in a judicial proceeding that he did not so elect, which would constitute a good cause for giving him further time. The statute did not take away his right of waiver, but merely changed the rule of evidence by which he was obliged to prove the right after the expiration of the year. During the year he has the right to file a waiver of his own motion. After the year he has the right, but cannot exercise it without showing some reasonable excuse for his previous inaction. If his failure to file it during the year is reasonably excusable, and the estate remains undisturbed, there is the strongest equitable reason for allowing him to file it after the year, *nunc pro tunc.* There is no reason why the other legatees should profit by his inability to ascertain during the year the necessary facts upon which to base an intelligent election, and we think it cannot be held that such was the legislative intention.

The construction of the statute is based on equitable considerations. Under the old statute, there was no way by which the husband or wife could be compelled to elect to take under the will or under the statute. Omission to do so for more than a year was of no significance. Estates were often left in a state of great uncertainty as to their final disposition and settlement. To remedy this, the time limit was inserted in the statute, after which the survivor could not waive the will without showing good reason

therefor—that is, some reasonable explanation of previous failure to do so. Upon showing such reason, the right at once becomes enforceable. A narrower construction, after the analogy of the statute of limitations, would lead to great injustice and leave important rights to depend upon the whim of the probate judge. For this, among other reasons, the statute should receive an equitable construction as a remedial statute, not intended to deprive people of valuable rights which, through excusable ignorance, they have not asserted at a particular time, and bestow them upon others, who before had no legal or equitable claim thereto.

Considering the history of our statute, we think the foregoing views as to the construction thereof must obtain here independently of authority elsewhere; but this construction has the support of authorities elsewhere, some of which are as follows:

The employment of the words "good cause shown" in the statute does not vest an arbitrary discretion in the probate or superior courts. *Pier* v. *Millerd*, 63 Wis. 33, 37 ; *State* v. *Bechdel*, 38 Minn. 278, 280 ; *Lord* v. *Hawkins*, 39 Minn. 73, 76 ; *Green* v. *Goodloe*, 7 Mo. 25 ; *Virginia etc. R. R.* v. *Henry*, 8 Nev. 165, 176.

Where a statute directs or authorizes a tribunal to act on " good cause shown," and the subject-matter to which such statute relates is not a wholly novel one, but is of a kind concerning which legal or equitable rules previously existed, the words " good cause " are presumed to refer to the causes deemed sufficient by the preexisting law. *Whitcher* v. *Benton*, 50 N. H. 25, 27 ; *Wheeler* v. *Pullman Co.*, 143 Ill. 197 ; *Hubbard* v. *Yocum*, 30 W. Va. 740.

By the established principles of equity, action taken without full understanding of material facts does not constitute a binding election ; and an apparent election between the provisions of a will and one's rights at law, made in ignorance of or under a mistake of material facts, may be revoked. *Macknet* v. *Macknet*, 29 N. J. Eq. 54 ; *Anderson's Appeal*, 36 Pa. St. 476 ; *Woodburn's Estate*, 138 Pa. St. 606 ; *Snelgrove* v. *Snelgrove*, 4 Desaus. 274 ; *Millikin* v. *Welliver*, 37 Ohio St. 460 ; *Garn* v. *Garn*, 135 Ind. 687 ; *Wake* v. *Wake*, 1 Ves. Jr. 335 ; *Dillon* v. *Parker*, 1 Swanst. 359, note 381.

The statute was not intended to deprive the surviving husband or wife of the right to an intelligent election, but merely to prevent needless delay in the settlement of estates. By the words " good cause shown," the legislature meant to confer upon the probate judge, and the superior court upon appeal, the same jurisdiction to reopen the question of election for fraud, mistake, or the like, which courts of equity had always exercised prior to the enactment of the statute. *Evan's Appeal*, 51 Conn. 435 ; *Smither* v. *Smither's Ex'r*, 9 Bush 230 ; *Smart* v. *Waterhose*, 10 Yerg. 94 ; *Wright* v. *West*, 2 Lea 78 ; *United States* v. *Duncan*, 4 McLean 99.

*Samuel C. Eastman* and *Frink & Marvin*, for the defendants.

PARSONS, C. J.   The husband may waive the provisions of his wife's will in his favor by writing filed within one year after her decease, "and not afterwards, unless the judge of probate, upon petition and for good cause shown, shall extend the time." P. S., c. 186, s. 13; *Ib.*, c. 195, s. 14.   The plaintiff's petition for leave to file a waiver of the will after the expiration of the year having been denied by the probate court, he duly appealed to and prosecuted his appeal in the superior court.   That court, upon hearing, made a special finding of facts and held that the facts found did "not constitute, either as matter of fact or of law, a good cause shown for extending the time in which to waive the provisions of the will," and dismissed the appeal.   To the foregoing finding and the order dismissing the appeal, and to the refusal of the court to enter an order sustaining the appeal and reversing the decree of the probate court, the plaintiff excepted.   It is conceded that the exception does not raise any question as to the accuracy of the special facts found and stated in the case.   There are no exceptions to evidence or procedure, and the only question presented is whether the conclusion of the court that good cause had not been shown was legal error.

Prior to the Public Statutes (1891) there was no statutory limitation of the time within which either husband or wife might waive the other's will and take instead the rights under the statute which depended upon such waiver (G. L., c. 202, ss. 7–10, 15, 16), unless it appeared that the provisions of the will were intended to be in addition to those of the statute. *Brown* v. *Brown*, 55 N. H. 106; G. L., c. 202, s. 18.   But conduct inconsistent with an intent to waive the will was regarded as an election to hold under the will. *Hovey* v. *Hovey*, 61 N. H. 599. The uncertainty whether the rights of the survivor were to be determined by the statute or the will, in the absence of any definite act establishing such election, tended to delay the settlement of estates and was without doubt the cause of the statutory addition.   This prescribed a rule of evidence, under which the absence of a written waiver on file at the end of the year conclusively established an election to take under the will.   As the right was purely statutory, the legislature had power to withdraw it altogether, or to impose such limitations upon its exercise as might seem to them just.   It is apparent that there might be cases in which the right of election could not be intelligently exercised, and other cases where without fault the survivor might neglect or be unable to file the waiver, within the year.   In such circumstances a strict application of the rule might produce injustice if

no relief could be afforded. To provide for such cases is the object of the clauses which authorize the probate court to extend the time for filing such waiver "for good cause shown."

The expression "good cause shown" is not common in the statute law of the state. The only use of it that has been found which has been construed by the court is in the statute relating to costs. "In all actions or petitions in the supreme court, costs may, on motion and good cause shown, be limited," etc. G. S., c. 214, s. 2. In *Whitcher* v. *Benton*, 50 N. H. 25, 27, it is said, in substance, that whatever would make it appear just and reasonable that costs should be limited would be good cause for so doing. In *Forster* v. *Farquhar*, [1893] 1 Q. B. 564, 567, in construing a rule authorizing the court to limit costs "for good cause shown," it is said: "No nearer and no closer definition can be given than that there will be good cause whenever it is fair and just as between the parties that it should be so." See *Jones* v. *Curling*, 13 Q. B. Div. 262, 267. Considering the manifest reason of the provision, the probable legislative purpose, and the definition of the term already given by this court and others, it appears probable that it was intended that permission to file the waiver after the year should be given whenever it would be reasonable and just to do so; in other words, when justice required it.

What justice requires is a question of fact which is finally determined by the tribunal trying that fact (*Cook* v. *Lee*, 72 N. H. 569), whether the question be one of costs (*Nutter* v. *Varney*, 64 N. H. 334), the allowance of an amendment (P. S., c. 222, s. 8; *Morgan* v. *Joyce*, 66 N. H. 476), whether permission should be granted to prosecute a claim against the estate of a deceased person after the time limited by law (P. S., c. 191, s. 27; *Libby* v. *Hutchinson*, 72 N. H. 190, 192), whether a new trial should be granted in any case (P. S., c. 230, s. 1; *Ela* v. *Ela*, 72 N. H. 216), or whether one claiming damages under the traveler's statute should be permitted to file notice thereof. P. S., c. 76, s. 8; *Boyd* v. *Derry*, 68 N. H. 272. What justice requires, whenever the question arises, is "a proper subject for investigation in the superior court; but it presents no question of law for determination in this court." *Fulton Pulley Co.* v. *Machine Co.*, 71 N. H. 384; *First Nat'l Bank* v. *Savings Bank*, 71 N. H. 547, 551; *Priest* v. *Railroad*, 71 N. H. 114, 116; *Carr* v. *Adams*, 70 N. H. 622; *Story* v. *Railroad*, 70 N. H. 364, 367; *Parsons* v. *Durham*, 70 N. H. 44, 46; *Jaquith* v. *Benoit*, 70 N. H. 1; *Hale* v. *Jaques*, 69 N. H. 411, 412; *Lawson* v. *Kimball*, 68 N. H. 549, 551; *State* v. *Collins*, 68 N. H. 46; *Broadhurst* v. *Morgan*, 66 N. H. 480; *State* v. *Stone*, 65 N. H. 124, 126; *Powers* v. *Holt*, 62 N. H. 625; *Davis* v. *Dyer*, 62 N. H. 231; *Page* v. *Whidden*,

59 N. H. 507; *Webster* v. *Webster*, 58 N. H. 247; *Brooks* v. *Howard*, 58 N. H. 91; *Eames* v. *Stevens*, 26 N. H. 117, 121. It has been held that a statute which directs that a court may do a thing on good cause shown vests a discretion in the court. *People* v. *Sessions*, 62 How. Pr. 415; *Kendall* v. *Briley*, 86 N. C. 56; *Kerchner* v. *Singletary*, 15 S. C. 535. "Judicial discretion, in its technical legal sense, is the name of the decision of certain questions of fact by the court." *Darling* v. *Westmoreland*, 52 N. H. 401, 408; *Bundy* v. *Hyde*, 50 N. H. 116, 120. It is in fact conceded in the plaintiff's brief, that whether good cause exists in a given case is a question of fact. This conclusion, assented to by the plaintiff and supported by the authorities, is decisive of his exception.

Whether good cause was shown—what justice required—has been found as a fact from the evidentiary facts reported, by the tribunal having jurisdiction to find the fact. Such a finding, if supported by any competent evidence, cannot be set aside except under such circumstances as would authorize the setting aside of the verdict of a jury as against the weight of the evidence, *i. e.*, that the result was produced by passion, partiality, or corruption, or that the trier of fact unwittingly fell into a plain mistake. *Colburn* v. *Groton*, 66 N. H. 151, 154; *Norris* v. *Clark*, 72 N. H. 442, 444.

In this case the appellant was the moving party; the burden was on him to establish his contention. The question, therefore, is not whether some fact found authorizes or requires the dismissal of his appeal, because the absence of sufficient evidence to prove the affirmative of the issue to the satisfaction of the trier of fact is as fatal to his case as the most conclusive evidence against his claim could be. The question is not whether this court, sitting as triers of the fact, would have found the same or a different verdict upon the facts stated, but merely whether any fact or facts reported so conclusively establish that justice requires the granting of the plaintiff's petition, that the refusal to do so upon all the facts found, with all the inferences that might with reason be drawn from them, is plainly unreasonable. In other words, is it apparent that the court unwittingly fell into a plain mistake, or is any fact found inconsistent as matter of law with the verdict (*Concord Coal Co.* v. *Ferrin*, 71 N. H. 33, 35); for no other ground upon which the conclusion of the court can be reversed is suggested.

By the will and codicil, the plaintiff was given the real estate in fee, subject to a life estate in one half to Mrs. Hale, Mrs. Jaques' mother. After deducting pecuniary legacies, he was also given a life estate in one half of the personal property, the other

half being given to Mrs. Hale for life, remainder to Mrs. Chandler. The problem presented to the petitioner was whether he should take such estate, or one half of the whole, both real and personal, in fee. He was informed as to his rights and, it is found, must have understood it was for his pecuniary advantage to insist upon his distributive share under the statute, while it was for the ultimate advantage of Mrs. Chandler that the will should not be waived. It was alleged that the parties interested to have the appellant abide by the will entertained feelings of hostility toward him, which they concealed for the purpose of inducing him to forego his right to waive the will, and it is found that if during the year Mr. Jaques had anticipated the legal controversies and bitter feelings which have since developed, he would have waived the will. But the charge of concealment for the purpose of inducing Mr. Jaques not to waive the will is not found to be proved. It is found it was not proved. Whatever resentment or ill feeling arose during the year, it is found Mr. Jaques as a reasonable man ought to have anticipated would result from the course pursued by him. Much of the trouble arose from the fact that the parties directly interested were co-executors and were of such temperament that they could not work together without irritation, friction, and ill feeling. This, it is found, both parties must have known. A waiver of the will while both parties remained executors would probably not have lessened the difficulties encountered. Substantially the same, if not greater, trouble would probably have ensued in a division of the property which gave one half in fee to Mr. Jaques, as in attempting to make one which gave him half for life. Most of the controversies appear to have arisen since the year expired.

It is further claimed that within the year Mr. Jaques did not know the value of the estate. Upon this point it is found that Mr. Jaques had full knowledge respecting his wife's property, and that there was no fact relating to its nature, location, situation, or amount, of which he was ignorant during the year after her death. This finding would seem to be conclusive. The argument, however, is based upon another finding as to the securities of the estate. A considerable portion of the estate consisted of stock in the Manhattan Brass Company and of a claim against that company for money loaned. It is found that at the time of Mrs. Jaques' death Mr. Jaques could not accurately estimate the value of this portion of the estate. There has been no change in the value of this portion of the estate, except what has been brought about by improved management and business conditions. It appeared that Mr. Jaques was a stockholder and officer in the Brass Company for many years, and had full knowledge of and

was familiar with all its financial and business interests. It is not found that Mr. Jaques was misled in any way, or that if he had anticipated the improvement in the value of the stock and claim, which it appears to have been conceded took place, he would have waived the will. In the absence of such findings, it cannot be held as matter of law that he should be permitted to waive the will because of such change which, so far as appears, may have been anticipated by him. The substance of both claims is the same—a change in the situation after the year. If such a change is evidence which would authorize a decree for the plaintiff,—a point not now decided,—it does not require it as matter of law.

The question between the parties was one of fact. That fact has been tried and determined, without exception to any ruling of law by the trial court. An exception to the finding of fact upon evidence, even if the evidence is complex and conflicting, does not invoke the jurisdiction of this court. *Searles* v. *Churchill*, 69 N. H. 530.

*Exception overruled.*

WALKER and YOUNG, JJ., did not sit: the others concurred.