## ROYAL INDEMNITY CO. v. EARLES.
### No. 11429.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1945.

Rehearing Denied Jan. 10, 1946.

Adair Rembert, of Dallas, Tex., for appellant.

A. B. Culbertson and Cecil A. Morgan, both of Fort Worth, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit for compensation for injuries resulting from an accidental strain in the course of plaintiff's employment, was tried to the court without a jury, and elaborate findings of fact were filed. Summed up they were: that plaintiff, as a result of an accident occurring on April 22, 1943, suffered a general compensable injury; that on December 1, 1943, he filed his claim with the Industrial Accident Board, admittedly not within six months; but that his case was a meritorious one, and he alleged and proved continuing good cause for not filing earlier. Concluding that on these facts and under the schedule as provided by the Workmen's Compensation Law, based upon the agreed earnings of plaintiff, he was entitled to recover $2,858, the District Judge gave him judgment for that amount.

Appealing from that judgment, defendant is attacking, as without support in the evidence and therefore clearly erroneous, the fact findings, (1) that there was a compensable injury, and (2) that there was good cause for not filing until December 1. In support of its first attack, appellant relies on the testimony of its physician witness, that the injury appellee claims to have suffered could not have resulted from the claimed accident and does not in fact exist; and further, that if he is suffering from the injury he claims, it could not and did not incapacitate him from working. Appellant's summary of the evidence and its attack upon the findings do make out a strong

case in support of its theory that no injury was sustained. But they do not overthrow the findings because the evidence they rely on is not all of the evidence. Plaintiff offered the evidence of a physician whose testimony supports his claim.

■ The District Judge heard and saw all of the witnesses, including plaintiff. He gave credence not to defendant's doctors and their theory, but to plaintiff and the theory of his witness, and we cannot, as appellant urges us to do, say that this testimony was so incredible as to require rejection. In these circumstances, to substitute our judgment for that of the District Judge would be to usurp his province, to take upon ourselves a fact finding function entrusted not to us but to the trial judge.

On the issue of good cause, appellant stands no better. The phrase "good cause", appearing in the last clause of Sec. 4a of Art. 8307,[1] fixing a time for notice and for filing, is not therein defined. Neither, though the phrase had been used in other connections and as used had been construed,[2] was there then existing any body of decision with respect to its meaning as used in workmen's compensation statutes to which litigants or courts could resort.[3] Because this was so, in deciding the multitude of "good cause" cases which have arisen under the Act, the Texas courts, in stating the meaning and effect of the clause and giving the phrase application to varying states of fact, were in a real sense pioneering. With so many "good cause" cases pressed, so much judicial pioneering to be done, and so many judicial pioneers working at it, it is not strange that many con-

fused and confusing trails were marked and much back tracking was done in the wilderness before the "good cause" road became the broad highway it now seems to be. At least if the judicial pioneers were not consciously confused, their legal fellow travelers were. Sometimes it was by what was not, sometimes it was by what was, said in the opinions. Perhaps, though, the real source of the confusion was that lawyers are of more common clay and cast in lesser molds than the judges. Having experienced that mysterious metempsychosis which occurs when, sloughing off the soul of the lawyer, they rise on stepping stones of their dead selves to higher things, judges are no longer, as lawyers are, slaves to words but their masters, able in using them to make them mean what they choose them to mean, neither more nor less. Authorized to fulminate, and thus emancipated from the stern necessity of persuading and convincing under which lawyers labor, they forget that lawyers are not so masterful and discerning as judges are, and, forgetting, fail to clearly and fully set forth in the opinion the real facts which produced the decision. Matters standing thus, in the unending struggle between lawyers for the insurance carriers to have "good cause" determined as a question of law, and those of the compensation claimants to have it determined as a question of fact,[4] judicial trails have crossed and recrossed, at times heresy has seemed doctrine, doctrine heresy.

Though under the peculiar wording of the statute, "For good cause the board may * * * waive", the view that the waiver was a matter of discretion,[5] reviewable only

---

[1] "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employé or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board." Art. 8307, Sec. 4(a), Vernon's Civil Statutes of the State of Texas.

[2] 18 Words and Phrases, Perm.Ed., p. 452.

[3] "The principal problem, of course, is the determination of 'good cause'. The phrase was not, prior to the Act, a technical one, so our investigation on that point necessarily proceeds from the origin of things." Sec. 240, Texas Workmen's Compensation Law, Lawler.

[4] "Law and Fact in Insurance Cases", Hutcheson, Texas Law Review, (Dec. 1944) Vol. XXIII.

[5] In Jaques v. Chandler, 73 N.H. 376, 62 A. 713, 714, it is said of a statute authorizing extension of time "for good cause shown": " * * * it appears probable that it was intended that permission to file the waiver after the year should be given whenever it would be reasonable and just to do so; in other words, when justice required it.

for abuse, would have been quite reasonable, the Texas courts did not take that view. From the beginning they prescribed a standard for determining the existence of good cause to which the triers of fact, whether board or court, must conform. This standard, as early set out in Consolidated Underwriters v. Seale, Tex.Civ.App., 237 S.W. 642, 644, is: "Construing liberally the expression 'for good cause,' we think all that is required of an injured employé is that he prosecute his claim for compensation with that degree of diligence that an ordinary man, situated as he was, would have exercised, under the same or similar circumstances."

There, both board and jury having found good cause, the court said:

"We think the facts of this record raise that issue, and that it was properly submitted to the jury. * * *

"These facts were reviewed by the board, and by making an award in favor of appellee they necessarily found that good cause was shown * * *. On a trial to a jury the issue was again found in appellee's favor. After carefully reviewing the facts, we are unwilling to say that the issue of good cause was not raised."

This standard has never been departed from.[6] But once set up, claimants and carriers formed their lines around it, and each case became a battle ground on which, as to "good cause", the old and familiar issue of law and fact was fought out. In each case the issue drawn was whether the facts put forward [7] to show good cause for not filing made an issue of fact as to whether plaintiff had conformed to the standard set or whether the evidence showed, as matter of law, that he had or had not conformed. In short, the issue was drawn as to whether, following rules of right reason in the particular case, reasonable minds could draw only one conclusion as to the presence or absence of "good cause" and an instructed verdict was therefore demanded, or could draw more than one conclusion, and there was an issue of fact for the jury.

At first there was some confusion as to whether the matter was for the Board alone,[8] but this was no more than a temporary confusion. It was soon settled by authoritative decision that the trial de novo provided for by law brings all matters, including good cause, before the court for trial.[9] But differences of opinion as to law and fact were not the only source of con-

---

"What justice requires is a question of fact which is finally determined by the tribunal trying that fact * * *. What justice requires, whenever the question arises, is 'a proper subject for investigation in the superior court; but it presents no question of law for determination in this court.' * * * It has been held that a statute which directs that a court may do a thing on good cause shown vests a discretion in the court. * * * Whether good cause was shown—what justice required—has been found as a fact from the evidentiary facts reported, by the tribunal having jurisdiction to find the fact. Such a finding, if supported by any competent evidence, cannot be set aside except under such circumstances as would authorize the setting aside of the verdict of a jury as against the weight of the evidence, i. e., that the result was produced by passion, partiality, or corruption, or that the trier of fact unwittingly fell into a plain mistake."

[6] Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088; Holloway v. Texas Indem. Ins. Co., Tex.Com. App., 40 S.W.2d 75; Commercial Standard Ins. Co. v. Hayes, 135 Tex. 288, 142 S.W.2d 897; Texas Employers' Assoc. v. Roberts, 135 Tex. 123, 139 S.W.2d 80; Hurd v. Republic Underwriters, Tex.Civ. App., 105 S.W.2d 428; New Amsterdam

Cas. Co. v. Chamness, Tex.Civ.App., 63 S.W.2d 1058; Maryland Cas. Co. v. Cobb, 5 Cir., 131 F.2d 603; Maryland Cas. Co. v. Perkins, Tex.Civ.App., 153 S.W.2d 647; Traders & General Ins. Co. v. Jacques, Tex.Civ.App., 131 S.W.2d 133, 135. In this case the court said: "The statute does not define 'good cause'; and manifestly whether in a given case the circumstances which occasioned the delay constitute 'good cause,' is a question of fact; unless the evidence be of that conclusive character that no reasonable and substantial inference supporting 'good cause' may be drawn from it." Lawler, Texas Workmen's Compensation, Sec. 242, p. 415.

[7] Ignorance; triviality of injury; a long course of negotiations; minority; reliance on counsel, on employer, on advice of physicians; and many other excuses for non-action have been and are being put forward; Lawler Texas Workmen's Compensation Law, Secs. 243–247, pp. 416–420.

[8] Cf. Home Life & Acc. Co. v. Orchard, Tex.Civ.App., 227 S.W. 705, 707; Texas Employers' Ins. Ass'n v. McGrady, Tex. Civ.App., 296 S.W. 920, 923; Lawler, Texas Workmen's Compensation Law, Sec. 241.

[9] Petroleum Cas. Co. v. Dean, Tex.Civ. App., 92 S.W.2d 1140; Lawler, Texas Workmen's Compensation Law, p. 412.

'fusion in the growth and progress of the law of good cause. One, and perhaps the most prolific source was the difference of opinion which for a time existed as to whether the six months within which to file ran from the date of the accident or from the date when incapacity had resulted, and plaintiff knew that the accident was its cause. This confusion was a very serious one, for while it prevailed many a too late filing was sustained, and under the influence of such decisions as Texas Employers' Ins. Ass'n v. Fricker, Tex.Civ.App., 16 S.W.2d 391; Texas Employers' Assoc. v. Wonderley, Tex.Civ.App., 16 S.W.2d 386, 389; and Texas Employers Ins. Ass'n v. Guidry, Tex. Civ.App., 93 S.W.2d 508; claimants, lulled into the belief that they had six months in which to file after their 'incapacity had so developed, that they could relate it to the accidental cause, were rudely shocked to discover that the law was quite the contrary, and that they must have good cause continuing until the date of filing.[10]

It was the existence of this aberration in the Texas cases, which produced our straddle in McKay's case, Fidelity & Casualty Co. of New York v. McKay, 5 Cir., 73 F.2d 828, 829, where, citing Texas cases, we said:

"The Texas courts have held that the occurrence of the injury does not mean the occurrence of the accident which results in injury, but refers to the development of the result, to the point that a state of facts exists which makes compensation due. * * * [The claim] was filed within six months from that time.

"But if it should have been made within six months from Jan. 1. * * * The Board entertained it, finding that good cause existed for the delay up to the time of filing, and the jury did the same. Good faith and reasonable diligence under the circumstances are enough."

It was the coming to an end of this period of aberration which produced, and in this court was signalized by, our opinion in Indemnity Insurance Co. v. McManus, 5 Cir., 88 F.2d 924, 925, on which appellant mistakenly and vainly relies. Appellant reads the opinion as though it held as matter of law that a delay of 22 days in filing claim for an injury after its disabling consequences were known, defeated the claim of good cause. So reading it, appellant insists that the longer delay here from November 5th, when plaintiff's counsel wrote to the adjuster, to December 1st, when he filed claim, is necessarily fatal to the claim that good cause existed up to the time of filing. It is true that the opinion, after referring to the delay from May 2d, to May 24th, does say that plaintiff "did not have good cause for not making the claim up to the time he filed it". But this statement must not be read as a dictum in vacuo that the mere lapse of twenty-two, or any other particular number of days, would, as matter of law, negative the existence of good cause. It must be read as holding that under the facts pleaded and proven, and under the issues tendered for our decision, the claim of good cause had not been made out. The issues decided are correctly shown by the headnotes to the opinion. They are correctly shown too by the statement the court made and the authorities it cited in the paragraph [11] next following the above-quoted statement. These were (1) that compensation should be calculated from the date of the physical injury, not from the date incapacity ensued, and (2) that good cause for failure to file within six months from the injury must continue to exist until the time of the filing thereof.

A rereading of the record and briefs filed in that case leaves in no doubt that these and not the number of days, whose lapsing would defeat the claim of good cause,

---

10 Lawler, Texas Workmen's Compensation Law, Sec. 243 and cases cited. Indemnity Ins. Co. of N. A. v. McManus, 5 Cir., 88 F.2d 924, and cases it cites.

11 "The case turns upon the proper construction of the Texas Compensation Law, and it is the duty of the federal court in construing a state statute to follow the construction given it by the state court of last resort. Since the argument and submission of this cause in this court, the Supreme Court of Texas has construed the applicable statutes to mean that compensation should be calculated continuously from

the date of the physical injury, and not from the date incapacity ensued, and that good cause for failure to file the claim within six months must continue to exist until the time of the filing thereof. Texas Employers' Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900. See, also, Jones v. Texas Employers Ins. Ass'n, 128 Tex. 437, 99 S.W.2d 903; Texas Employers Ins. Ass'n v. White, Tex.Com.App., 99 S.W.2d 904; Indem. Ins. Co. of North America v. Williams, 129 Tex. 51, 99 S.W.2d 905. Cf. Rice v. Maryland Casualty Company, 5 Cir., 88 F.2d 923, decided March 4, 1937." 88 F.2d at page 925.

were the issues tendered for decision in the McManus case and there decided. Appellant there, the insurance carrier, insisting that it was necessary that plaintiff show good cause up to the time of filing, pointed out: that he had admitted that on May 2d he knew his injuries were compensable; and that he had neither pleaded nor proved good cause continuing after that time. Appellee, the claimant, insisting that the six months the statute gave to file claim ran not from the time of the accidental injury but from the time when his incapacity became manifest, cited several Texas decisions [12] and one from this court [13] which had been decided before the Supreme Court of Texas in the series of cases reported in 99 S.W.2d [14] had settled the law to the contrary. Argued before but decided after those decisions had come down, the McManus case held on their authority: that the six months provided in the statute ran not from the discovery of the incapacity but from the occurrence of the injury; that good cause for not filing must be shown to have continued up to the time the claim was filed; that the cause had been erroneously submitted to the jury; and that the judgment should be reversed and the cause remanded for another trial because of error in its submission. It does not at all support appellant's view that the lapse of any particular number of days after plaintiff was fully cognizant of his claim as matter of law defeats it.

■ Coming now to the particular facts of plaintiff's case, we think it may not at all be doubted under the authorities that whether a reasonably prudent person situated as claimant was would have waited until December 1st to file his claim was at worst for claimant a question of fact for the trier, and that the finding that claimant's conduct was in accord with reasonable prudence is amply supported in the evidence. Indeed, under precisely applicable authorities,[15] the facts [16] come pretty close to making out good cause as matter of law. No reversible error appearing, the judgment is affirmed.

---

[12] Texas Employers' Ins. Ass'n v. Fricker, Tex.Civ.App., 16 S.W.2d 391; Texas Employers' Ins. Ass'n v. Wonderley, Tex. Civ.App., 16 S.W.2d 389; Texas Employers' Ins. Ass'n v. Guidry, Tex.Civ.App., 93 S.W.2d 508.

[13] Fidelity & Casualty Co. of New York v. McKay, 5 Cir., 73 F.2d 828.

[14] See note 11, supra.

[15] United States F. & G. v. Morgan, Tex.Civ.App., 18 S.W.2d 810; Security Union Ins. Co. v. Hall, Tex.Civ.App., 37 S.W.2d 811; Lawler Texas Workmen's Compensation Law, Sec. 246, p. 419.

[16] The early notice to the company, the continuous knowledge by the company of his condition, the long and friendly negotiations which had been going on between him and the company's adjuster, reasonable hope that the matter might be settled without litigation, if a reasonable time was given the adjuster to consider and act upon plaintiff's written proposition, of friendly settlement.