Hillsborough,
Feb. 3, 1903.

MURRAY, *Adm'r, v.* BOSTON & MAINE RAILROAD.

A material declaration concerning a transaction which is the subject of inves-
tigation, made after the lapse of so brief an interval and in such intimate,
circumstantial connection with the event in issue as to reasonably consti-
tute a legitimate part thereof, may be admitted in evidence as part of the
*res gestæ,* although not strictly and literally contemporaneous with the fact
it tends to elucidate and explain.

The manner in which an accident occurred, as disclosed by the evidence, may
warrant an inference that the person injured had no actual knowledge of
the defect which caused his injury.

In an action against a railroad company for injuries sustained by an experi-
enced employee, evidence that an unused jigger-stand which caused the
accident was situated near a switch and at a distance from a car-house,·
where such appliances are not customarily located, warrants a submission
of the question whether the person injured ought reasonably to have antici-
pated its existence.

The circumstances under which an accident happened may warrant an infer-
ence of due care on the part of a person injured, in the absence of any evi-
dence tending to prove his negligence.

CASE, for negligently causing the death of Baker, the plaintiff's
intestate. Trial by jury and verdict for the plaintiff. At the
close of the plaintiff's evidence, the defendants' motion for a non-
suit was denied, subject to exception. Transferred from the May
term, 1902, of the superior court by *Young,* J.

The plaintiff's evidence tended to prove the following facts:
At the time of the accident, and for some time prior thereto,
Baker was in the employ of the defendants as a freight brakeman.
The crew to which he belonged had no regular run, but worked
on extras on the lines of the defendants' road running out of
Nashua. During the two months before the accident, they had
been over the road from Nashua to Keene about a dozen times.
The accident occurred in the yard at Greenfield, at about two
o'clock in the morning, while the crew were engaged in making up
their train. Baker was the "middle man," and it was his duty to
throw a switch after certain loaded coal cars had been drawn from
a side track upon the main track. While the cars were in motion,
some one with a lantern was seen by one of the men on the car
next to the rear one, and when nearly opposite the switch the
lantern disappeared, going down by the side of the car, on the side
of the track opposite the switch. On this side of the track and
about six feet from the switch, there was a "jigger-stand," consist-

ing of two planks placed at right angles with the track and within two or three inches of it, and extending back some fifteen feet. Such appliances are used by the section men in running their cars from the track. There was no car-house at this point, and the stand had not been used for two or three years. Just after the lantern disappeared, and as soon as the car passed the switch and stopped, Baker was heard to cry out and groan. One of the witnesses at once ran to him, and found him lying between the planks, his back to the track, with both legs nearly severed from his body. Another witness, who reached the place in less than two minutes after he heard the outcry, asked Baker what the matter was, and he replied that he had lost his legs. The witness asked, " How did you do that?" and Baker replied, " I fell over these old planks." This testimony was admitted subject to the defendants' exception. Baker died in a few hours thereafter. The broken pieces of his lantern were found near him between the planks, and there was blood on the rail at the end of the planks and on one of the car wheels.

Jigger-stands are of frequent occurrence on the defendants' various roads on which Baker had worked, but in a great majority of cases they are opposite car-houses and not in the immediate vicinity of switches. One of the trainmen who worked with Baker testified that he had not noticed this jigger-stand before the accident. It did not appear whether Baker had ever operated this switch, or whether he had ever got off his car at this point on the side where the stand was. The stand had been there from seven to ten years. It appeared that some years ago Baker went over the road as brakeman a large number of times, but had not worked there in recent years until about two months before the accident.

Doyle & Lucier, for the plaintiff.

Burns & Burns and Hamblett & Spring, for the defendants.

WALKER, J. It is claimed that Baker's statement made directly after the infliction of his injury was not admissible. If the declaration was merely a narrative of a past event, the evidence of it would be inadmissible, upon the ground that ordinarily hearsay evidence is not received in proof of the truth of an assertion. The uniform practice of the courts in common-law jurisdictions has resulted in the establishment of this principle, as a necessary and useful rule in the investigation of questions of fact. But when the declaration of one not a sworn witness upon the trial is something more than mere narrative,—when its probative force is derived in part, at least, from sources other than the credibility of the declar-

ant,—an opportunity is afforded for the argument that it does not fall within the strict rule against hearsay evidence, or that it constitutes an exception to the rule. It is then possible to say that the declaration, while verbally a mere narrative, is something more, and may be, for that reason, of such probative force as to be admissible as evidence upon a material issue. It may be so connected with other controverted facts as to be itself a fact or circumstance naturally growing out of and in some sense attested by them. The verbal statement of a person made under some circumstances may be a part of the actual occurrence, and be entitled to as much weight as evidence as any other part of the transaction. This is the principle, it is believed, that is involved in the somewhat obscure doctrine of *res gestæ*, which is often resorted to, apparently, more on account of its convenient indefiniteness than for its scientific precision. But the principle, whether expressed in an abbreviated Latin phrase or otherwise, is an important one in any system of evidence whose object is the ascertainment of facts. Its development has been promoted, in modern times, by an effort to afford the triers of fact all reasonable means of ascertaining the truth, instead of withholding from them all information possible by the rigid application of certain rules of exclusion. The question is not now, how little, but how much, logically competent proof is admissible.

In cases of this character, it is important to ascertain what, if any, relevancy the declaration has; in other words, what it tends to prove; for unless its natural effect is to prove or explain a point in issue or a controverted fact, it is not admissible. In this case the burden was upon the plaintiff to establish by a balance of the probabilities that his intestate received his injury in consequence of the negligence of the defendant. This, in a broad general sense, was the issue tried; but it involved a material inquiry as to the manner in which the accident happened. If it is assumed that suffering the planks to be where it is admitted they were was a negligent act of the defendant, it was important for the plaintiff to show that they were the proximate or effective cause of the accident. If in the exercise of due care the deceased would not have received the injury complained of but for the existence of the planks at that particular place and time, the plaintiff would have sustained the burden assumed by him. On the other hand, if the cause of the accident was something other than the planks, as manifestly might have been the case, his failure in this respect might have been fatal. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159. The controversy was whether the planks caused the deceased to stumble and fall, and thus to suffer the injury inflicted upon him by the car wheel running over his legs. The plaintiff's evi-

dence was that the deceased was found almost immediately after the accident lying between the planks, with his legs practically severed from his body ; that the fragments of his broken lantern were on the ground near him; and that blood and bits of flesh were found upon the car wheel and near the planks.    These are all physical facts which as evidence afford some information as to how the accident happened.    They are relevant details or results of the main fact.    In the strictest sense, they may not together constitute or fully evidence the fact in controversy; but in law they are said to be a part of it.    The admission of evidence of this character is placed upon the ground that it discloses to the jury the facts and circumstances which attended the principal fact; in a not inappropriate sense, they are a part of the *res gestæ*, and exist as evidence of it.    *Willis* v. *Quimby*, 31 N. H. 485 ; *Tucker* v. *Peaslee* 36 N. H. 167, 181 ; *Wyman* v. *Perkins*, 39 N. H. 218 ; *Willey* v. *Portsmouth*, 64 N. H. 214, 219.

When, instead of attendant physical facts and circumstances, the evidence consists of a declaration, made by a person at the time of the event or transaction which is under investigation, its admission depends upon a similar principle.    If its materiality or relevancy is conceded, the question whether it is a part of the *res gestæ* arises ; that is, whether it occurred in such intimate connection with the event in issue as to constitute it in a reasonable and proper sense a part thereof.    If it does, it is in its probative bearing superior to mere hearsay remarks, and may for that reason be admissible.    " Its connection with the act gives the declaration greater importance than what is due to the mere assertion of a fact by a stranger, or a declaration by the party himself at another time.    It is part of the transaction, and may be given in evidence in the same manner as any other fact."    *Hadley* v. *Carter*, 8 N. H. 40, 43.    " Where evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate or give a character to the act, and which may derive a degree of credit from the act itself, are also admissible, as a part of the *res gestæ*."    *Sessions* v. *Little*, 9 N. H. 271, 276.

After approving the statement quoted above from *Hadley* v. *Carter*, the court in *Wiggin* v. *Plumer*, 31 N. H. 251, 267, state the principle as follows:  " When a fact is offered in evidence, the whole transaction, if it consists of many particulars, may and ought to be proved.    Every additional circumstance proved may vary the effect of the evidence, may neutralize it, or give it point.    What is then said by the parties, and what is said by others to them, relative to the subject of the transaction, is a part of the transaction itself.    It is admissible on the same principle that every other part of it is, that the whole matter may be seen by the jury.

. . . Contemporaneous, but otherwise unconnected, conversation is rejected, on the same ground as other unconnected facts. If the statement offered in evidence does not tend to elucidate or give character to the acts proved, it is to be rejected. If it is upon the same subject and relative to the act in proof, it should be received." See, also, to the same effect, *Mahurin* v. *Bellows*, 14 N. H. 209, 212; *Tenney* v. *Evans*, 14 N. H. 343, 350; *Morrill* v. *Foster*, 32 N. H. 358.

But while admitting that the foregoing statements of the law are substantially correct, the defendant insists that a declaration of the character received in this case, in order to be admissible, must have been strictly and literally contemporaneous with the fact it was intended to elucidate or explain. In other words, it is in effect conceded that if, while the car wheels were passing over Baker's legs, he had exclaimed "I fell over these old planks," that statement would have been admissible as a part of the *res gestæ;* but it is claimed that, although made within two minutes after the actual infliction of the injury, while he was lying between the planks groaning on account of the pain, and while no substantial change had occurred in the attendant circumstances, it is not admissible, because the accident was then a past event and the statement a mere narrative. But this technical refinement is not based upon a reasonable view of the principle involved. No satisfactory reason is assigned for the distinction suggested. If the statement of a party made while a serious injury is being inflicted upon him is regarded as an evidentiary fact throwing light upon the manner of the occurrence, why does not the same statement made immediately after the principal event, as an intimately connected and natural result or detail thereof, in the presence of all the physical facts of the accident, constitute an equally admissible part of the proof? Why may it not be as much a part of the *res gestæ* as the fact that the declarant is found at the same time lying in a place and position indicating the manner of the accident? His position as well as his declaration may be to some extent subject to his volition. If the very short period of two minutes after a man's legs have been severed from his body in a railroad accident prevents his declaration then made from being deemed a part of the transaction, it is difficult to understand why his position, which may be as much subject to his intelligent control during that brief and trying interval of time as his power of verbal communication, should be regarded as a competent evidentiary fact explaining the manner of the accident. The fact is, that both his declaration and his position may be under the circumstances credible and admissible evidence, for very similar reasons; and that to exclude the evidence in the one case, because it may be fabricated,

would furnish a reason for its exclusion in the other.  The possibility of its being unreliable would seem to relate to the weight, rather than to the admissibility, of the evidence.  That the doctrine of exact coincidence in such cases is not followed in this state, is plainly indicated in *Caverno* v. *Jones*, 61 N. H. 623, 624, in which it was decided that, in trespass for assault and battery, threats to do the plaintiff bodily harm, made by the defendant so soon after the alleged assault as to constitute a part of the transaction, are competent.  Nor do any of the decisions in this jurisdiction warrant the assumption that the defendant's theory has been adopted here.  See cases above cited.

Cases in other states and in England, it must be admitted, are not in accord.  Some adopt an unreasonably strict construction of the rule (*Regina* v. *Bedingfield*, 14 Cox C. C. 341; *State* v. *Davidson*, 30 Vt. 377; *Eastman* v. *Railroad*, 165 Mass. 342; *Louisville etc. R. R.* v. *Pearson*, 97 Ala. 211, 215; *Cleveland etc. R. R.* v. *Mara*, 26 Ohio St. 185); others admit statements only remotely connected with the principal fact (*Insurance. Co.* v. *Mosly*, 8 Wall. 397; *Commonwealth* v. *M'Pike*, 3 Cush. 181; *Craig* v. *State*, 30 Tex. App. 619); while others adopt what seems to be the more rational view, as stated in *Commonwealth* v. *Hackett*, 2 Allen 136, 140, that statements are admissible when "it appears that they were uttered after the lapse of so brief an interval, and in such connection with the principal transaction, as to form a legitimate part of it, and to receive credit and support as one of the circumstances which accompanied and illustrated the main fact."  *Rawson* v. *Haigh*, 2 Bing. 99; *Rouch* v. *Railway*, 1 Q. B. 50; *Regina* v. *Lunny*, 6 Cox C. C. 477; *Waldele* v. *Railroad*, 95 N. Y. 274; *Martin* v. *Railroad*, 103 N. Y. 626; *Estell* v. *State*, 51 N. J. Law 182; *Mayes* v. *State*, 64 Miss. 329; *Pittsburg etc. R'y* v. *Wright*, 80 Ind. 182; *Wood* v. *State*, 92 Ind. 269; *Keyes* v. *State*, 122 Ind. 527; *Chicago etc. R'y* v. *Becker*, 128 Ill. 545; *Lambert* v. *People*, 29 Mich. 71; *People* v. *Gage*, 62 Mich. 271; *People* v. *O'Brien*, 92 Mich. 17; *Christianson* v. *Company*, 92 Wis. 649; *McMurrin* v. *Rigby*, 80 Ia. 322; *Fish* v. *Railway*, 96 Ia. 702; *State* v. *Rider*, 95 Mo. 474; *People* v. *Vernon*, 35 Cal. 49.  See, also, Professor Thayer's article on *Bedingfield's Case*, 14 Am. Law Rev. 817; 15 *Ib.* 71.

The seriousness of the injury, the character of the accident, and the surrounding physical circumstances and results of the occurrence, attending the declaration as well as the principal fact, are necessary matters for consideration in the determination of the question of the admissibility of the declaration.  When a person receives a sudden injury, it is natural for him, if in the possession of his faculties, to state at once how it happened.  Metaphorically

it may be said, the act speaks through him and discloses its character. It is as if it were a part of the act itself. This view of the common experience of mankind shows that, if the declaration has that character, it possesses an important element of reliability and significance which is foreign to narrative remarks made so long after the event as to derive directly no probative force from it, and that it should be admitted like any other material fact or evidentiary detail. If this principle of evidence may be difficult of application in practice, its soundness is not thereby weakened. A discriminating observance of it will promote the successful discovery of truth, which, without its aid, is often involved in great obscurity.

It is not contended that Baker's statement was not relevant, or that it did not tend to show how the accident happened; that is, the proximate cause of it. It was not mere hearsay, depending alone for its truthfulness upon the credibility of an unsworn witness. It was directly connected in point of time with the main fact, and was made while Baker was in the place where the force of the collision presumably threw him, and in view of all the surrounding physical facts connected with his misfortune. It cannot be said, therefore, as a matter of law, that his remark did not derive credit from the occurrence with which it was so intimately connected, or that it was not in a reasonable sense a part thereof and admissible in evidence. Although in form it was a narrative, it could not be excluded for that reason alone, if in other respects it was competent. Nor does the fact that it was made in answer to the witness' question deprive it of its character as a part of the *res gestæ. Fish* v. *Railway,* 96 Ia. 702, 707; *Crookham* v. *State,* 5 W. Va. 510. To exclude it, "would be practically to say that no declaration or statement, however near to the principal fact, or however important and material as giving to it color and significance, could ever be admitted in proof." *Commonwealth* v. *Hackett, supra,* 140. How far the question of the admissibility of such testimony may be determined by the trial court as a matter of discretion, it is unnecessary in this case to decide; for the exception to its admission presents no error. In *Commonwealth* v. *M'Pike,* 3 Cush. 181, 184, it is said that "in the admission of testimony of this character, much must be left to the exercise of the sound discretion of the presiding justice"; while the contrary of that proposition seems to be maintained in *Lund* v. *Tyngsborough,* 9 Cush. 36, 41.

The defendant insists that the motion for a nonsuit should have been granted, because Baker must be held to have assumed the risk in consequence of which he was injured. This contention in effect concedes that the defendant was negligent in permitting a

jigger-stand to be where this one was, and that it was an operating cause of the accident; but it is claimed the plaintiff cannot recover, for the reason that the danger incurred was one of the incidents of his intestate's employment. If the latter did not know of the existence of the jigger-stand near the switch which he was about to operate, or if, in the exercise of ordinary care in the performance of his duties, he was not chargeable with such knowledge, he cannot be held responsible for consequences resulting from his failure to take such precautions for his safety as a knowledge of the danger would have suggested to a man of ordinary prudence; otherwise he is precluded by the doctrine of the assumption of risk. " The plaintiff was bound to prove that the special danger causing the injury was not known to " Baker, " and in the exercise of ordinary care by him would not have come to his knowledge." *Burnham* v. *Railroad,* 68 N. H. 567.

If the fact that the accident happened is not alone sufficient evidence of the injured party's want of knowledge of the existence of the defective appliance causing it, or of his exercise of due care (*Jones* v. *Railroad,* 66 N. H. 185; *Gahagan* v. *Railroad,* 70 N. H. 441; *Waldron* v. *Railroad,* 71 N. H. 362), the manner of the occurrence, when that is in part disclosed by the evidence, may warrant an inference in his favor upon these points. In this case the plaintiff's evidence (which, upon this motion, is to be taken as true) showed that it was Baker's duty to set the switch which was by the jigger-stand. This stand consisted of two planks, about fifteen feet long, placed at right angles with the track. When nearly opposite this place, at about two o'clock in the morning, Baker, who was on a car, went down over the side of the car to set the switch. The night was a dark one. Very soon thereafter he made an outcry, the car wheels passed over his legs, and he at once said he stumbled over the planks. His position immediately after the accident, the blood on the rail between the planks, as one witness testified, the pieces of his broken lantern near him, corroborated and supported the statement that he stumbled over the planks. If he had known that there was a jigger-stand at that place, he would have known that some care was necessary to avoid falling over it in the performance of his work. It is hardly conceivable that he would have knowingly encountered that danger,— that is, knowing the obstruction was directly in his way, he would have stumbled over it. The act of stumbling usually implies the existence of an object in a traveler's way of which he was at the time unconscious. It is no answer to say that Baker must have known of this obstruction because he had been over the road as a brakeman ten or twelve times within two months of the accident; for it appeared that men who worked with him during that time

had not noticed it before the accident. It was not so conspicuous as necessarily to attract the attention of brakemen. It is at least apparent that fair-minded men might reasonably draw the inference from the evidence (*Hardy* v. *Railroad*, 68 N. H. 523, 536; *Whitcher* v. *Railroad*, 70 N. H. 242, 245) that Baker did not know that his approach to the switch lay over a jigger-stand.

But it is urged that he ought to have known it. His experience for many years as a freight brakeman must have afforded him the information that such stands are of frequent occurrence on the line of a railroad, and that they are necessary appliances at certain points for the use of the section men. But while it appeared from the cross-examination of the plaintiff's witnesses that these appliances are numerous on lines of road on which Baker had worked, it also appeared that they are seldom placed near a switch and usually lead into car-houses, which would afford some notice of their existence. Upon the evidence, it might be found that a brakeman ought to know that in the vicinity o house there would in all probability be a jigger-stand; and t    existence near a switch and away from a car-house was so u    as to make it unreasonable to say that a breakman ought :o . pate such an arrangement at every switching point. It was   unreasonable for the jury to infer from the evidence that m ordinary prudence in Baker's position, and possessing his kn edge of the means employed in the business of railroading, would not anticipate the existence of a jigger-stand at this particular point. If upon this subject fair-minded men might differ, the question should be submitted to the jury. It does not appear that Baker ought to have anticipated the peculiar obstruction which caused him to stumble.

The further contention is made that there is no evidence that Baker exercised reasonable care in the performance of his work at the time of the accident,—a fact the plaintiff was bound to prove by competent evidence. But it is not necessary that the evidence should be direct; the fact may be inferred from circumstances; and, in the absence of direct proof, the question is whether the circumstances legitimately warrant an inference of the fact. *Hutchins* v. *Macomber*, 68 N. H. 473; *Burnham* v. *Railroad*, 69 N. H. 280, 282, 283. When Baker was last seen before the accident, he was getting down over the side of the car nearly opposite the switch, for the purpose, evidently, of setting the switch; he was attending to his duty. He had had extensive experience as a brakeman, and understood perfectly how to perform his work with reasonable safety under ordinary circumstances. The time that elapsed after his lantern disappeared over the side of the car until he cried out was very brief. What he was doing

during that short space of time is not a mere matter of conjecture. It was competent for the jury to infer that he was proceeding to reach the switch in the way an experienced brakeman would adopt under the circumstances, and that such a way would be a reasonably prudent one—not the opposite. The evidence was sufficient to warrant that finding, in the absence of any evidence tending to show that he was negligent. *Hutchins* v. *Macomber, supra.*

As there is no contention that the evidence did not warrant a finding of the defendant's negligence in permitting the jigger-stand to be near the switch in question, no error is apparent in the trial, and the verdict must stand.

*Exception overruled.*

Chase, J., was absent: the others concurred.