Merrimack, }
Dec. 5, 1911. }

### GLOVER  *v.*  BAKER, *Ex'r, & a.*

Against the objection of either party, questions of law arising in the superior court may be transferred to and determined by the supreme court, without a ruling by the former tribunal and exception thereto.

BILL IN EQUITY, to which the defendants demurred. The questions of law arising upon the demurrer were transferred without a ruling from the April term, 1911, of the superior court by *Wallace*, C. J. The case was entered in the supreme court on September 29, 1911. October 2, 1911, the plaintiff filed the following motion: "The plaintiff moves that the above entitled action be remanded to the superior court."

*Hannis Taylor* amd *William L. Chambers* (both of the District of Columbia), *William E. Chandler, John W. Kelley*, and *Dewitt C. Howe* (*Messrs. Chandler, Taylor*, and *Kelley* orally), for the plaintiff.

*Elder, Whitman & Barnum, William A. Morse*, and *Leon W. Abbott* (all of Massachusetts), and *Streeter, Demond & Woodworth* (*Mr. Streeter* orally), for the defendants.

PARSONS, C. J. The questions of law arising upon the defendants' demurrer are transferred to this court without ruling. The plaintiff moves to remand the case without consideration of the questions presented. This motion is not based upon the ground that as matter of convenience the facts should be found before any attempt is made to settle the law, but upon the claim in the brief that as matter of law the superior court, against the objection of either party, has no power under existing law to transfer, and this court no jurisdiction to determine, questions of law, except after final trial and settlement by the superior court of all questions involved. Upon argument, the claim appeared to be reduced to the contention that, against the objection of a party, questions of law could not be considered here except upon exception to rulings made in the superior court.

The administration of the law is probably as little hampered here by subservience to form in procedure as in any common-law jurisdiction. Here, in the vindication of "contested rights in civil cases, each party has such remedy, including form, method, and order of procedure, as justice and convenience require." *Owen* v. *Weston*, 63 N. H. 599, 600. The power of the superior court to transfer in some way a question for determination and the jurisdiction of this court to determine it being conceded, the form in which the question is presented is not usually thought entitled to consideration. *Petition of Mœbus*, 73 N. H. 350, 351; *Hutchinson* v. *Railway*, 73 N. H. 271, 277; *Claggett* v. *Simes*, 31 N. H. 56. When the facts are in dispute, it is not the practice to consider difficult questions of law which may not arise when the facts are found; but the case being before the court, questions that are necessarily involved in the controversy, the decision of which will aid in the trial, are generally considered, although the form in which they are presented is criticised. *Conn. Valley Lumber Co.* v. *Monroe*, 71 N. H. 473, 474; *State* v. *Stevens*, 36 N. H. 59, 61. Moreover, it appears from the record that the defendants' motion to dismiss the bill was denied subject to exception. Other exceptions are reported taken by both parties, and by the plaintiff to the order of transfer. The case cannot, therefore, be summarily remanded because of the absence of ruling and exceptions in the superior court.

It has been the practice here, as far back as the memory of any member of the bar can go, when important questions of law were involved in a controversy the decision of which might shorten the trial of the facts, to settle such questions first. Whether this should

be done if the parties did not agree has been determined by the trial court. Their settlement has been effected by a transfer of the questions to the law court for determination. As the ruling of the trial court was of no importance, the case being held without further action until the settlement of the questions by the law court, it has not been usual to waste time or energy in argument and decision in the trial court. By this method the parties may be saved a prolonged struggle over facts which in the end might be found entirely useless. The theory that questions of law could be finally determined only by a writ of error after final judgment has been so long abandoned as to be practically unknown to practitioners at this bar. The convenience and advantages of the existing system appear from its statement. It is as well known in practice as it is useful in doing justice. But it is said that the procedure is peculiar to this jurisdiction; and it seems to be urged that the plaintiff has been deprived of some rights because, at the expenditure of much time and labor of counsel on both sides and of the trial court, that court has not elaborately heard, considered, and decided the questions raised, although there is no possibility that the party against whom the decision might run would abide by it. It may therefore be useful to examine the origin and growth of the practice.

"Until 1813 there were no 'law terms' as contradistinguished from 'trial terms.' Each session of the court was required to be held by a majority of the judges, and questions of law and fact were 'blended together on the docket.' By the statute of June 24, 1813 (which remained in force until June 27, 1816), all the terms, except those commencing in November and December, were permitted to be held by a single judge; and all actions in which exceptions were allowed to his rulings were to be continued to the November and December terms in the respective counties, there to be determined by a majority of the judges. This statute also provided that 'all motions and petitions for new trials, and all appeals from judgments or decrees of judges of probate, and all questions of divorce and alimony, questions of law on statement of facts agreed by the parties, or special verdicts, and all issues in law,' should be 'heard, tried, and determined, exclusively' at the terms to be holden in November and December. Sects. 2, 3, 5, and 6. In the subsequent statute of November 5, 1813, sections 3 and 4, the expression 'law term' is applied to these November and December terms, as it is also in the index of the edition of New Hampshire Laws printed in 1815." Smith N. H., prefatory note, p. vii. The act of

June 27, 1816 (Laws 1816, *c.* 34), repealed the act of 1813 which established the supreme judicial court, revived the superior court of judicature, and restored the former practice under which law terms were unknown.

The act of December 29, 1832 (Laws 1832, Nov. Sess., *c.* 89), made a great and radical change in procedure. It was adopted, it is said, upon the written approval of *Richardson*, then chief justice, while its authorship is ascribed to *Parker*, almost immediately thereafter a judge of the court and later its chief justice. Shirley, Reporter's Note, 55 N. H. 7; Bell's Bench and Bar 87; J. E. Sargent in Dartmouth Memorial Addresses 86, 87. This act created a separate tribunal for the determination of questions of law. Section 7, from its phraseology doubtless drafted with the law of 1813 in mind, effected this purpose as follows: It gave the right of exception to any party aggrieved by any "opinion, direction, or judgment" of the court of common pleas (the court of fact) and directed the allowance by the presiding justice of exceptions if "conformable to the truth of the case," and then enacted: "And the said action, matter, process, or proceeding may thereupon, if the presiding justice shall so direct and order, be transferred to the superior court of judicature." If such transfer were not ordered, the exceptions were to be filed in the court of common pleas as the foundation of a writ of error. The section further provides: "In like manner any issue of law, motion for a new trial, question arising from any special verdict, and any other question or matter of law arising at any such term, may by the presiding justice present, if he think fit, be reserved and assigned and referred to the superior court of judicature. And the action, cause, motion, petition, or matter . . . shall in such case be transferred to the superior court of judicature." There was also a provision for a transfer upon an agreed statement of facts signed by the parties, "if the presiding judge shall deem it proper."

Under this section the questions which the presiding justice may reserve, assign, and refer include those of which under the act of 1813 the "law terms" were given exclusive jurisdiction to hear, try, and determine. If under the law of 1832 he had been expected to hear and determine them before assigning and referring them to the superior court, his conclusion thereon would have constituted an opinion, direction, or judgment open to exception, and the whole matter would have been covered by the provisions as to exceptions. The whole of the section, after the subject of exceptions is disposed

of, is unnecessary, useless, and absurd, except upon the theory that questions which the presiding judge thought fit to reserve, assign, and transfer to the superior court were those upon which he did not think fit to rule. The section provides for the two classes of cases: one in which the judge ruled—then the party had his exception; and those upon which he did not rule, but which he reserved and referred. This result would be reached without considering all the terms employed, but the word "reserve" cannot be rejected. It must have been understood to have some meaning. To reserve an "issue of law, motion for a new trial," or "any other question" is not to decide such issue, motion, or question, but the contrary; it is "to defer the discussion or determination of" such matter. Webster's New Int. Dict., Reserve, 2. The synonyms of the word "reserve" are "to keep, hold, retain, withhold." It is not synonymous with "determine, conclude, make a decision." Soule Eng. Syn. 102, 336.

At the December term, 1833, the superior court, when *Richardson* and *Parker* were both members, under authority of the statute adopted rules for the conduct of business in the two courts, one of which (Rule 34) prescribed procedure in the superior court applicable "whenever any question of law shall be raised in the common pleas . . . by demurrer, . . . and the cause shall be transferred." 6 N. H. 582. In the same volume, in *Jones* v. *Winchester* (*p.* 497), the statement of the case contains only the pleadings and the fact that there was a joinder in demurrer. The record is the same in *Hill* v. *Loomis*, 6 N. H. 263. This was the form in *State* v. *Varney*, Smith N. H. 322, *Webster* v. *Edson*, Smith N. H. 370, and *New Hampshire Strafford Bank* v. *Mellen*, Smith N. H. 385, in 1814 and 1815, when the law term had exclusive jurisdiction to hear, try, and determine "all issues of law." It is demonstrable, therefore, that in 1833 the law was understood to authorize the reference to the law court of questions of law arising in the trial court without their prior decision by the latter court.

Section 7 of the act of 1832 is a substantial statement of the provisions to be found in the Public Statutes (*c.* 204, *ss.* 11, 12, 13), as modified by section 8, chapter 172, Revised Statutes, which provided for the transfer of the questions of law raised instead of the action itself (*Wingate* v. *Haywood*, 40 N. H. 437), and by section 17, chapter 1659, Laws 1855, which authorized the party taking exceptions, in case the presiding judge declined to reserve and transfer the questions arising thereon, to enter the exceptions at once in

the law court instead of leaving them in the trial court as a foundation for a writ of error. These provisions with the modifications mentioned have been re-enacted in 1842, 1855, 1867, 1878, and 1891, and no question has ever been raised as to their meaning. Laws 1832, Nov. Sess., c. 89, s. 7; R. S., c. 172, s. 8; Laws 1855, c. 1659, s. 17; G. S., c. 189, s. 11; G. L., c. 208, ss. 5, 11; P. S., c. 204, s. 13. The rule of court referred to has been twice reissued in substance. Rule 34 (1833), 6 N. H. 582; Rule 51 (1859), 38 N. H. 593; Rule 55 (1875), 56 N. H. 591.

Doubtless the facts that at first all,questions both of law and fact were determined at the same terms by the same court, that the first provision in 1813 merely continued questions of law to a single term, and that in 1832 the action itself was transferred when the determination of a question of law was desired, may have influenced the practice when, after 1842, only the question raised was transferred. After the change in 1842, the statute enacted in 1855 enumerated with great detail the questions that might be reserved, and recognized the existing practice by providing that the supreme judicial court (the law court then established) should upon consideration of questions reserved and assigned by the presiding justice "render or order such judgment, or make and certify such decisions as they think required by the circumstances of the case." Laws 1855, c. 1659, s. 17. This section is a trifle more extended in form, but the effect of the language is precisely that found in the Public Statutes, chapter 204. Section 11 of that chapter provides for the taking of exceptions and their preservation as part of the record; section 12, for filing such exceptions in the law term by the party taking them, there to be considered and determined as upon writ of error or other proper process. Section 13 is: "Questions arising upon such exceptions, upon a special verdict, an issue of law, motion for a new trial or in arrest of judgment, or other motion or proceeding, or upon a statement of facts agreed to and signed by the parties, may be reserved and assigned by the presiding justice or by any justice of the court in vacation, if he think fit, to the determination of the court at the next law term." The substance of the language used by Judge *Parker* in 1832 and approved by *Richardson*, then chief justice, still survives in the statute.

Not only is the trial judge not required to decide questions reserved, but he never does so. The question arising upon exceptions which he reserves is the validity of the exceptions—whether in spite of them there is to be judgment on the verdict, or whether

because of them the verdict should be set aside. The question decided at the law term reserved upon exception is whether the exception should be sustained or overruled. This question the presiding judge is no more required to rule upon than upon other questions which he is also authorized to reserve, and in practice he does not rule upon it.

It is true that no decision upon argument is to be found holding that questions of law may be transferred without ruling thereon by the trial justice. This is doubtless due to the fact that since the various statutes expressly give the power to transfer questions of law raised in various ways for the determination of the law court, without limitation of such power by requiring their previous determination by the trial court so as to be subject to exception, no one has hitherto understood such limitation could by construction be inserted in the statute; and in *State* v. *Sawtelle*, 66 N. H. 488, 503, it was expressly held that "the trial court, of its own motion and without the suggestion of either party, may, if it think fit, reserve a question of law for consideration at the law term." The question so reserved in that case was vital to the validity of the verdict and was given great consideration. If an opposite conclusion to that in the opinion had been reached, a long and expensive trial in a capital case would have been invalidated. The only exception to this power in the trial court is found in the inferior exclusive jurisdiction of the court of common pleas under the statute of 1855. In that case questions of law could be transferred only upon exception. Laws 1855, c. 1659, s. 5.

Reliance is placed upon *Claggett* v. *Simes*, 31 N. H. 56, to support the proposition that only questions arising upon exceptions can be transferred. The original case, reported 25 N. H. 402, was a petition to the court of common pleas to vacate a judgment in that court. There was a transfer to the superior court of judicature and an order from that court under which the petition was dismissed in the common pleas. The Revised Statutes then in force provided for the reservation of questions arising upon exceptions or upon a special verdict, and any issue of law, motion for a new trial, or agreed statement of facts (R. S., c. 172, s. 8); and it was objected that, as in the previous transfer it did not appear that the common pleas had made any ruling, or that any exception had been taken, the transfer did not appear to have been made in any of the cases defined in the statute, *i. e.*, it was not upon exception or special verdict, nor was the petition to vacate the former judgment an issue of law, a motion

for a new trial, or an agreed statement of facts. The court disposed of the question by the conclusion that the transfer implied an exception. Whether a ruling or an exception was necessary to authorize the transfer of an issue of law was not in question. So far as the case implies that a ruling and exception is necessary in any case, it is overruled by *State* v. *Sawtelle,* above cited. See, also, *Perkins* v. *Langmaid,* 36 N. H. 501, 506.

*Fellows* v. *Fellows,* 68 N. H. 611, so far as it relates to the technical point relied upon in support of the motion, is authority against it. Counsel are not alone in thinking that this case decides that, as matter of law, questions arising upon the pleadings in equity are not considered until the facts are found. The same error appears to have been made by another presumably equally unfamiliar with the local practice. See 2 Cyc. 746. But the case does not so decide. Upon the pleadings in that case, which were of great length and disclosed that the facts were nearly all in dispute, the presiding justice reserved without ruling seven questions for the determination of the law term. If such action were not permissible, a sufficient reason for the discharge of the case would have been found therein. But the discharge of the case without consideration was put upon the ground that in that particular case it was clear the most convenient procedure required that the facts should first be determined. There was no novelty in this procedure. *State* v. *Morin,* 65 N. H. 667; *Winnipiseogee etc. Co.* v. *Gilford,* 66 N. H. 621; *State* v. *Lewis,* 66 N. H. 623. The practice has since been followed. *State* v. *Railroad,* 70 N. H. 421, 435; *Laton* v. *Balcom,* 70 N. H. 635. As has been suggested, in some cases questions of law may lie at the bottom of the whole controversy or of particular branches of it. The determination of such questions in advance may prevent a useless, prolonged struggle over evidence; in others, the determination of the facts may greatly simplify or remove all controverted questions of law.

Whether the facts or the law should first be ascertained is determined by questions of expediency and convenience in each case. In support of the motion, our attention has not been directed to the facts or legal questions involved in this controversy. In the absence of a thorough examination of the record, with the aid of an explanation by counsel of the several claims, the question whether all or some of the questions of law ought not to be determined in advance of a trial of the facts cannot be satisfactorily settled. A cursory examination seems to indicate that the action might be advanced

in the superior court by a final decision now of some of the legal questions involved, but no decision upon that point is now intended.

But it is urged that, conceding the transfer made was permissible prior to 1901, the legislation of that year (*c.* 78) creating two courts abolished the convenient procedure under which the law had been administered for sixty-nine years. The purpose of this act, as declared in its title, was to establish "a judiciary system consisting of two courts." It was plainly modeled on the judiciary acts of 1874 (*c.* 97) and 1876 (*c.* 25), the one creating two courts in place of one, and the other restoring one in place of the two. Like the first act, it confers upon the law court all the jurisdiction of the existing court at the law term and upon the trial court all the powers belonging to the court at the trial term. Like both acts, it continues in force all existing legislation not inconsistent with the change, making it applicable to the new courts in their respective capacities. The existence of two courts instead of one in 1874 did not change the procedure under discussion. See *Gilman* v. *Laconia,* 55 N. H. 130; *Rice* v. *Holden,* 55 N. H. 398. It cannot be inferred that the same change was intended to have that effect in 1901. This legislation was not hastily adopted. It was the subject of very careful scrutiny, much discussion, and considerable controversy. It is safe to say that if a purpose to alter existing procedure had been deducible from the language of the act, such purpose would have been speedily discovered and its detection would have defeated the legislation. The judges of this court did not understand any change had been made. See Rule 6 of the supreme court, 71 N. H. 669. The practice since 1901 shows that the members of the court and the bar all understood in 1901 that the legislation of that year did not disturb existing procedure. But the inference often drawn from contemporary construction of expressions otherwise obscure need not, however, be appealed to. There is nothing in the act in conflict with the language conferring all power under existing law pertaining to the court at the law and trial terms upon the supreme and superior courts respectively. Section 5—"Questions of law arising in the trial of any case in the superior court may be transferred to the supreme court for final decision, upon a case or statement of facts reserved by the trial justice"—makes no change. If the statute, as in the law of 1832, provided for the transfer of the action, it might be argued that there could be no final decision of the action until the facts were determined. But there is no provision for the transfer of the action, but only of the question. As has

been already said and as the plaintiff contends, such has been the rule since 1842. The section makes no change in this respect.

There is no difficulty in regarding as finally adjudicated a question of law determined before the facts are found. *Veazie* v. *Wadleigh,* 11 Pet. 55. The provision is merely an enactment of the judicial rule repeatedly announced, that a question of law once decided will not be again re-examined in the same case, except upon a motion for rehearing. *Olney* v. *Railroad,* 73 N. H. 85, 91, and cases cited. That this court has the same power over questions of law that the whole court had prior to 1901 was expressly held in *Bath* v. *Haverhill,* 73 N. H. 511, though in that case no question was presented as to the form of transfer. The fundamental purpose of the act of 1901 was to disassociate the judges of law from the judges of fact. It was not intended to hamper the existing jurisdiction of either, and no language was used from which such intent can be inferred.

The superior court appears to entertain the opinion that in this case the law should be determined before proceeding to a trial of the facts. To the ruling based upon this conclusion the plaintiff has an exception. This exception will be considered when the case is more fully presented.

*Motion denied.*

WALKER, J., did not sit: the others concurred.