Merrimack, }
June 2, 1914. }

THOMAS NAWN, *Adm'r*, v. BOSTON & MAINE RAILROAD.

Where the victim of an accident makes a statement respecting the cause of his injury immediately upon regaining consciousness, the conclusion of the trial court that such declaration is so connected with the main transaction as to be admissible in evidence as part of the *res gestæ* presents no error of law.

In such case, the question whether the declarant was in fact unconscious up to the time his statement was made is to be decided by the trial court in ruling upon the admissibility of the declaration.

A question of fact arising in the course of a trial in the superior court is to be there determined, the jurisdiction of the supreme court in such case being limited to the question of law whether there was evidence upon which the decision could reasonably be made.

Evidence that a railroad employee, who was killed by a train while carrying boiler flues across the tracks, looked up the right of way on one or more occasions just prior to the fatal trip, before picking up a flue, is competent upon the question of his care.

Under section 2 of the employers' liability act (Laws 1911, c. 163), the defence of assumption of risk is no longer available; and in an action against a master for death by negligence, the plaintiff is relieved of the burden of proving the injured servant's freedom from fault, and may recover if the case discloses no evidence upon the question, or if the proof is evenly balanced.

In an action against employers for death by negligence, certain evidence deemed insufficient to conclusively establish that the injured servant was at fault.

CASE, for negligence resulting in the death of William Powell, the plaintiff's intestate. Transferred from the October term, 1913,

of the superior court by *Chamberlin,* J., on the defendants' exceptions to the denial of motions for a nonsuit and the direction of a verdict in their favor and to the admission of certain evidence.

Powell was employed by the defendants. On the morning of his injury he was at work carrying boiler flues across the track at the defendants' storehouse in Concord, and was struck by a derrick car which backed down upon him. The plaintiff offered in evidence a declaration by Powell with respect to the cause of his injury. There was evidence that he was unconscious from the time he was struck until the declaration was made. The court admitted the declaration subject to the defendants' exception, and reserved the discretion of the court whether the evidence warranted the finding that the declaration was near enough in point of time, considering the mental condition of Powell, to be properly admitted.

Subject to the defendants' exception, a witness who was not present at the time of the accident was permitted to testify that on one or more occasions prior to the last Powell looked up the track before picking up a flue for the purpose of carrying it across.

*John M. Stark* and *Martin & Howe* (*William W. Thayer* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Demond* orally), for the defendants.

PARSONS, C. J. 1. There was no error of law in the conclusion of the trial court that under the circumstances the declaration offered was so connected with the fact of injury as to be admissible. *Dorr* v. *Railway,* 76 N. H. 160; *Robinson* v. *Stahl,* 74 N. H. 310.

"When a person receives a sudden injury, it is natural for him, if in the possession of his faculties, to state at once how it happened. . . . This view of the common experience of mankind shows that, if the declaration has that character, it possesses an important element of reliability and significance which is foreign to narrative remarks made so long after the event as to derive directly no probative force from it." *Murray* v. *Railroad,* 72 N. H. 32, 37, 38.

Whether the declarations offered are spontaneous, the result of the transaction, or are made after an opportunity for reflection— whether their weight as evidence is found in the circumstances under which they were made, or in the credibility of the declarant— are considerations which govern the admissibility of evidence of

this character. *Murray* v. *Railroad, supra,* and cases cited, *p.* 37; 3 Wig. Ev., *ss.* 1747, 1748. If, as the evidence tended to show, the declaration was made with the declarant's first consciousness after the accident, it could be found to result spontaneously from the injury and to be a part of what took place so far as the declarant was concerned, and not to have been the result of reflection and consideration by him. So made, the declaration was admissible.

Whether the declarant was or was not unconscious, as the evidence tended to prove, is a question of fact to be decided by the court in ruling upon the admissibility of the evidence. "When the determination of the competency of a proposed piece of evidence involves a preliminary decision of any questions of fact by the presiding judge, his decision on such matters of fact is final and not subject to exception." *Hurlburt* v. *Bellows,* 50 N. H. 105, 115, 116. In this case, decided in 1870, comment is made upon the fact that the presiding judge reserved no question of fact or of discretion for the consideration of the law court. In the present case, the justice of the superior court presiding at the trial reserved "the discretion of the court whether the evidence warranted the finding that the declaration was near enough in time, considering the mental condition of the deceased, to be properly admitted." If this reservation was intended merely to present the question whether the unconsciousness of the declarant from the time of the accident to the time of the declaration was a fact competent for consideration upon the question of remoteness, and whether upon the evidence it could be found the declaration was not too remote, the reservation presents questions of law which have been considered.

"Judicial discretion, in its technical legal sense, is the name of the decision of certain questions of fact by the court," *Darling* v. *Westmoreland,* 52 N. H. 401, 408; *Bundy* v. *Hyde,* 50 N. H. 116, 120; *Jaques* v. *Chandler,* 73 N. H. 376. In *Glover* v. *Baker,* 76 N. H. 261, it was held that the justices of the superior court might reserve and transfer to this court for determination questions of law arising before them, without prior decision in that court. The question now appears to be presented whether they may send to this court for revision their conclusions upon matters of fact which are questions of law only because passed upon by the court and not by the jury.

In the case *Bundy* v. *Hyde,* cited above, in which the definition of "discretion" was formulated, it was said: "It is quite proper at

any time, and certainly expedient, in a case of considerable doubt and difficulty, for the presiding justice to reserve the question of discretion for the revision of the whole court." Since that time very many cases have been decided in which it has been held that matters arising in the conduct of the trial term, in which the question is what ought to be done, what does justice require in the particular instance, are questions of fact determinable at the trial term, not open to exception. The cases are very numerous. See *Jaques* v. *Chandler,* 73 N. H. 376, 381; 66 N. H. 683; 67 N. H. 616; 68 N. H. 625; 69 N. H. 688; 70 N. H. 660; 71 N. H. 638; 72 N. H. 626; 73 N. H. 645; 74 N. H. 621; 75 N. H. 643; 76 N. H. 632.

In many cases, in ruling that no question was presented by an exception to such findings, it has been remarked that no question of discretion had been reserved. These expressions tend to show an understanding that the finding of fact involved in determining a motion for a new trial, limiting costs, permitting leading questions, excluding evidence for remoteness, and the like, might be reserved and transferred to the law court, but the jurisdiction does not appear to have been recently examined with particular reference to this class of questions. In *Kent* v. *Hutchins,* 50 N. H. 92, 94, decided in July, 1870, it is said: "In matters of discretion, no exception lies to the ruling as matter of right. But in this case the court reserved the question as to the proper exercise of the discretion, and our opinion is that the discretion was properly and wisely exercised." In *Paul* v. *Reed,* 52 N. H. 136, decided in June, 1872, the question was when the title passed upon a sale of chattels. The court say (*p.* 138): "This is a question of fact, but it is submitted to the court for decision. Ordinarily it should be passed upon at the trial term; but where the question is a mixed one of law and fact, as it is here, it may not be irregular, if the judge thinks it best, to reserve the entire question for the whole court." The court then proceed to dispose of the case upon the assumption that questions both of law and fact are reserved. If, as this case tends to show, it was understood, as the court was organized in 1872, that the court at the law terms had jurisdiction of questions of fact which might be pending at the trial terms, that view was entirely abandoned under the later acts which declared the jurisdiction to be "of questions of law arising at a trial term, reserved or assigned for decision." P. S., *c.* 204, *s.* 3.

In *Metcalf* v. *Weed,* 66 N. H. 176, the question was whether a search warrant sufficiently described the place to be searched. It

was said that a description which identifies with reasonable certainty the place or places to be searched was legally sufficient. All the facts were found, and it was plainly the intent of the reservation to transfer to the law term the determination of the sufficiency of the description. But it was said to be a question of fact whether the description in the warrant designated the place to be searched with reasonable certainty, and that "a question of fact is not ordinarily determined at the law term, however strong or conclusive upon one side or the other the evidence recited in the case may seem to be, and though all the evidence relating to it is reported. *Jones* v. *Aqueduct*, 62 N. H. 488. There the reserved case contained an express finding (omitted as immaterial in the reported case) that 'herein are stated all the facts and circumstances claimed by either party to have any bearing upon the question whether the use made by the defendants of their land and water is or is not a reasonable use.' "

Either because of a change in the statute or in judicial interpretation, it is clear it was not understood in 1901 that the court at the law term had the jurisdiction to determine questions of fact, which was exercised in *Paul* v. *Reed, supra.* It is to be remembered that prior to 1901 the individual judges who held the trial terms sat together as the law court. While trial terms might generally be held by a single justice (P. S., *c.* 207, *s.* 1), there was no limitation to that number. In capital cases two were required (P. S., *c.* 254, *s.* 2), while in cases of great importance more, or all of the court, sat together as trial judges. *Attorney-General* v. *Taggart*, a case in which all the judges sat, reported 66 N. H. 362, was considered to be in the trial term for Hillsborough county. *Bingham* v. *Jewett*, 66 N. H. 382, and *Eastman* v. *Jewett*, 66 N. H. 624, were proceedings in the trial term. The present supreme court has the jurisdiction of all matters and things of which the court existing when the statute was passed had at the law term. Laws 1901, *c.* 78, *s.* 2; *Glover* v. *Baker*, 76 N. H. 261, 269. Whether all the judges sitting together who individually held the trial terms called their assembly a law or a trial term might seem mere verbiage; but the fact that the distinction was made is decisive of the jurisdiction of the present court over questions of fact arising in the trial term. Accordingly, following *Metcalf* v. *Weed, supra,* this court has refused to pass upon questions of fact, even when apparently referred to it by the superior court. *Ledoux* v. *Nashua*, 75 N. H. 481; *Crowley* v. *Crowley*, 72 N. H. 241, 243.

Although in 1870, in *Bundy* v. *Hyde*, the court recognized the propriety of the reservation of questions of discretion in difficult cases, in 1877, immediately after the reorganization of the court in 1876, it was said in *Fuller* v. *Bailey*, 58 N. H. 71, 72: "The question whether a verdict is against the evidence is one which the court at the trial term would not ordinarily reserve, and which the court at the law term would generally refuse to consider if it were reserved."

The distinction between law and fact in the decisions of the court was not so clearly observed in the early judicial history of the state, when all the questions of law and fact were blended together upon the docket and heard by the same judges. *Glover* v. *Baker*, 76 N. H. 261, 263. Since that time the tendency of statutory change and judicial decision has been to mark with greater clearness the dividing line. "The fundamental purpose of the act of 1901 was to disassociate the judges of law from the judges of fact." *Glover* v. *Baker*, 76 N. H. 261, 270. The judicial system as now established requires that questions of fact arising in the course of trials in the superior court shall be there decided, and the jurisdiction of the supreme court is thereby limited to the question of law, whether there was evidence upon which the decision could reasonably be made as it was made. *Jaques* v. *Chandler*, 73 N. H. 376, 382. As there was evidence upon which the declaration objected to could be found not too remote to aid in the decision of the question on trial, the record presents no other question as to this evidence within the control of this court.

2. The deceased was employed to carry boiler flues from piles upon the west side of a track in the railroad yard, across the track to a shop on the east side. He went to work at seven in the morning and about twenty minutes later was injured by a derrick car backed down the track, which struck him just as he stepped upon the track to carry a flue across. A witness who observed him at work being asked "Did you notice whether he paid any attention to the tracks?" answered "I noticed that before he picked up a flue he looked up the track," whereupon the defendants excepted. The inquiry was competent and the answer responsive. The question called for a part of the history of the transaction leading up to the accident and tended to throw light on the question whether the deceased was acting without any regard to the dangers of his work-place.

Whether the answer tended to prove that just before he started on the fatal trip across the track he looked up, and whether, if he did, such act was evidence of care, are questions not raised by the

general exception to the answer. No rule of law limits the evidence of the morning's events to the fraction of a minute while Powell was walking from the flue pile to the track upon his last trip. So much of what took place as the presiding judge found not too remote to aid the jury was competent.

3. The defendants' motions for a nonsuit and a verdict are based upon the claim that Powell's fault was part of the cause of his injury.

It is conceded that under the recent decision in *Boody* v. *Company*, *ante*, 208, the deceased's employment at the time of the injury was one of those described in section 1, chapter 163, Laws 1911. The defendants as employers not having accepted the provisions of the act as provided in section 3, the rule of liability in this case is prescribed by section 2, which provides: "The workman shall not be held to have assumed the risk of any injury due to any cause specified in this section; but there shall be no liability under this section for any injury to which it shall be made to appear by a preponderance of evidence that the negligence of the plaintiff contributed." By these provisions the defence of assumption of risk is wholly destroyed, and the plaintiff is relieved of the burden of proving the deceased's freedom from fault as a cause of the injury. If the case discloses no evidence upon the question, or the evidence is evenly balanced, the plaintiff may recover. It is only when the evidence balances in the defendant's favor that the defence of the contributory negligence of the injured employee may prevail. As the jury is the only tribunal authorized to weigh evidence, to determine upon which side the preponderance lies, the cases would seem to be few in which the judgment of that tribunal must not be invoked. If the plaintiff's evidence does not conclusively show the injured party's want of care, and evidence on that issue is presented by the defendant, it would ordinarily be for the jury to believe or disbelieve the defendant's witnesses. *Lally* v. *Insurance Co.*, 75 N. H. 188, 190; *Pillsbury* v. *Pillsbury*, 20 N. H. 90, 97. To justify a nonsuit, it must conclusively appear that the evidence leads to but one conclusion. *Perham* v. *Lane*, 76 N. H. 580; *State* v. *Leary*, 75 N. H. 459, 462; *State* v. *Harrington*, 69 N. H. 496. In other words, concretely applying the principle, can a reasoning mind fail to reach the conclusion that Powell was in fault?

This was his first employment; the accident occurred within twenty minutes after he went to work. If he had looked to the north immediately before he stepped upon the track, he probably

would have escaped injury. Was his failure to look both ways at the moment of his entry upon the track so plainly careless, in view of his knowledge of the situation, that he must be held in fault? That he looked to the north before picking up a flue is evidence of his understanding of the extent of the danger from that direction. Whether the profane warning the defendants' witness testified was given him to be careful of that switcher, "it is running back and forth all the time," was in fact given, was for the jury to say. They might not believe such a witness; or if they did, they might think from the way Powell was doing his work that he did not understand the switcher would be run at such a speed over his work-place that looking in that direction before he picked up a flue was not sufficient precaution. There was conflict as to the speed at which the derrick car train was run. On one view of the evidence, it may not have been in sight when Powell started to take up the flue. That running a train in such a way over a track where other employees were set at work is evidence of negligence is not contested. Reasonable men might conclude that with Powell's inexperience in railroad work he was not careless because he failed to anticipate and guard himself against such recklessness in operation.

As it might be found the train was not in sight just before Powell took up the flue for his last trip, the fact that he was struck does not conclusively prove that he did not then look. If, as the defendants contend, the evidence that he looked on two or three previous trips before picking up a flue is not legally competent to prove that he did look on the last trip, its incompetency might leave the case without evidence on the point, but would not establish "a preponderance of evidence" that he did not look.

*Exceptions overruled.*

PLUMMER, J., was absent: the others concurred.